FILED

JUL 27 2026

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N F O R M A T I O N |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. **1:26 CR 00339** |
| | ) | Title 18, United States Code, |
| MARTY MCCAULLEY, | ) | Sections 1343 and 2 |
| | ) | |
| Defendant. | ) | **JUDGE CALABRESE** |

GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise specified:

Defendant and Relevant Entities

1.    Defendant MARTY MCCAULLEY resided in South Euclid, Ohio, in the Northern District of Ohio, Eastern Division.

2.    Alexander Carter (charged separately) resided in East Cleveland, Ohio, in the Northern District of Ohio, Eastern Division.

3.    Bank 1 was a federally insured financial institution headquartered in North Carolina. Bank 1 had branch offices and automated teller machines ("ATMs") located in the Northern District of Ohio.

4.    Bank 2 was a federally insured financial institution headquartered in Cleveland, Ohio. Bank 2 had branch offices and automated teller machines ("ATMs") located in the Northern District of Ohio.

## Unemployment Insurance Background

5.      The Social Security Act of 1935 initiated the federal and state unemployment insurance ("UI") system.  The UI system provided temporary financial assistance to eligible lawful workers who were unemployed through no fault of their own.  The purpose of the UI system was twofold: to lessen the effects of unemployment through direct cash payments to laid-off workers; and to ensure that life necessities were met weekly while the worker sought employment.

6.      State unemployment systems and benefits were joint federal and state enterprises administered by the State Workforce Agency ("SWA") of a given state and largely financed by taxes on private employers located in the state.  SWAs administered UI programs in accordance with federal laws and regulations.  Each state set its own additional requirements for eligibility, benefit amounts, and length of time benefits were paid.  Generally, UI weekly benefit amounts were based on a percentage of a lawful worker's earnings over a base period.  When state unemployment benefits were exhausted, the U.S. Department of Labor ("DOL") could supplement them with federal funds.

7.      Because of the COVID-19 pandemic, legislation expanded the SWAs' ability to provide UI benefits.  On or about March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act into law.  The CARES Act expanded SWAs' ability to provide UI for many workers impacted by COVID-19, including for workers who were not ordinarily eligible for UI benefits.  The CARES Act provided for new programs, including Pandemic Unemployment Assistance ("PUA") and other programs ("Pandemic UI").

8.      The California SWA was the Employment Development Department ("EDD").  The California SWA used Bank 1 to administer Pandemic UI benefits.  If the California SWA

2

approved the claimant's application, Bank 1 mailed a debit card to the claimant which was subsequently loaded with benefits on the claimant's card at certain intervals. The claimant could change the mailing address with Bank 1 after the claim was approved. Bank 1's servers were located in Texas and California. Pandemic UI applications to the California SWA were routed through servers located in California.

9. The Indiana SWA was the Indiana Department of Workforce Development ("IDD"). The Indiana SWA used Bank 2 to administer Pandemic UI benefits. If the Indiana SWA approved the claimant's application, either Bank 2 issued UI benefits through direct deposit into a bank account of the claimant's designation, or Bank 2 mailed a debit card to the claimant, which was subsequently loaded with benefits on the claimant's card at certain intervals. Pandemic UI applications to the Indiana SWA were transmitted to Indiana.

10. When applying for Pandemic UI, claimants answered various questions to establish their eligibility, including whether they had performed work in the state in which they were claiming Pandemic UI benefits. Claimants were required to provide personal identifying information, which included their name, mailing address, gender, email, phone number, social security number, and date of birth. Moreover, claimants had to identify a qualifying occupational status and COVID-19-related reason for being unemployed. Claimants could also submit several documents as evidence of their income.

<div align="center">

COUNT 1
(Wire Fraud, 18 U.S.C. §§ 1343 and 2)

</div>

The United States Attorney charges:

11. The factual allegations contained in paragraphs 1 through 10 of this Information are re-alleged and incorporated as though fully set forth herein.

<div align="center">3</div>

The Scheme to Defraud

12. From in or around June 2020 through in or around December 2022, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MARTY MCCAULLEY, Alexander Carter (charged separately), and others known and unknown to the United States Attorney knowingly devised, and intended to devise, a scheme and artifice to defraud the United States Department of Labor, EDD, IDD and other state SWAs, and to obtain Pandemic UI benefits, money, and property to which Defendant was not entitled from United States Department of Labor, EDD, IDD and other state SWAs by means of false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

Manner and Means of the Scheme

13. It was part of the scheme that:

a. Defendant and others knowingly made and caused to be made materially false statements and omissions on Pandemic UI applications to EDD, IDD and other state SWAs to appear to be eligible to receive Pandemic UI benefits, including false statements regarding employment history, residency, and other information, and misrepresentations about who was receiving the benefits sought, with many applications filed on behalf of persons who never gave anyone permission to apply for Pandemic UI benefits on their behalf or to use a debit card in their name.

b. These materially false statements and omissions on the Pandemic UI benefits applications induced DOL, EDD, IDD and other SWAs to issue Pandemic UI benefits to which Defendant and others were not entitled, totaling at least $182,393 in Pandemic UI funds, including in the form of debit cards from Bank 1 and Bank 2, for benefits from EDD and IDD,

4

respectively. Many of those debit cards were obtained unlawfully by using the means of identification of victims.

      c.     Defendant received the fraudulently obtained Bank 1- and Bank 2-issued debit cards and used them to make cash withdrawals at bank ATMs and other locations in the Northern District of Ohio, thereby obtaining Pandemic UI benefits he was not qualified or authorized to receive.

<div align="center">Acts in Furtherance of the Scheme</div>

14.    In furtherance of the scheme, and to accomplish its purposes and conceal the existence thereof, Defendant committed and caused to be committed, in the Northern District of Ohio, and elsewhere, the following acts, among others:

<div align="center">*Victim L.C. – California Application*</div>

15.    On or about July 16, 2020, Defendant caused to be submitted to EDD an electronic application for Pandemic UI benefits in the name of L.C., listing the mailing address for the debit card as Defendant's address in South Euclid, Ohio. The information on the application concerning L.C.'s residence, employment, and income was false, along with misrepresentations about who was receiving the benefits sought.

16.    On or about July 17, 2020, Defendant caused Bank 1 to send, via regular U.S. mail, to Defendant's address in South Euclid, Ohio, a Bank 1-issued debit card in the name of L.C., which was subsequently loaded with Pandemic UI benefits in the approximate amount of $30,810.

17.    On or about July 28, 2020, Defendant withdrew $1,000 from a Bank 1 ATM located in Mayfield Heights, Ohio using the Bank 1-issued debit card in the name of L.C.,

thereby obtaining California Pandemic UI benefits for which he was not eligible and to which he was not entitled, knowing the benefits were obtained under false pretenses.

*Victim D.F. – California Application*

18.     On or about July 15, 2020, Defendant caused to be submitted to EDD an electronic application for Pandemic UI benefits in the name of D.F., listing the mailing address for the debit card as Defendant's address in South Euclid, Ohio.  The information on the application concerning D.F.'s residence, employment, and income was false, along with misrepresentations about who was receiving the benefits sought.

19.     On or about July 17, 2020, Defendant caused Bank 1 to send, via regular U.S. mail, to Defendant's address in South Euclid, Ohio, a Bank 1-issued debit card in the name of D.F., which was subsequently loaded with Pandemic UI benefits in the approximate amount of $17,700.

20.     On or about July 30, 2020, Defendant withdrew $1,000 from a Bank 1 ATM located in the Northern District of Ohio using the Bank 1-issued debit card in the name of D.F., thereby obtaining California Pandemic UI benefits for which he was not eligible and to which he was not entitled, knowing the benefits were obtained under false pretenses.

*Victim A.S. – California Application*

21.     On or about July 13, 2020, Defendant caused to be submitted to EDD an electronic application for Pandemic UI benefits in the name of A.S.  The information on the application concerning A.S.'s residence and employment was false, along with misrepresentations about who was receiving the benefits sought.

22.     On or about July 15, 2020, Defendant and others known to the United States Attorney caused Bank 1 to send, via regular U.S. mail, to a residential address in East Cleveland,

6

Ohio, a Bank 1-issued debit card in the name of A.S., which was subsequently loaded with Pandemic UI benefits in the approximate amount of $15,545.

23.     From on or about July 21, 2020, to on or about July 26, 2020, Defendant and others known to the United States Attorney used the Bank 1-issued debit card in the name of A.S., thereby obtaining California Pandemic UI benefits for which he was not eligible and to which he was not entitled, knowing the benefits were obtained under false pretenses.

*Defendant's Indiana Application*

24.     On or about December 10, 2020, Defendant caused to be submitted to IDD an electronic application for Pandemic UI benefits in the name of the Defendant. The information on the application concerning Defendant's residence and employment was false.

*Victim R.T. – Indiana Application*

25.     On or about December 12, 2022, Defendant caused to be submitted to IDD an electronic application for Pandemic UI benefits in the name of R.T, attempting to obtain $33,975 in Pandemic UI benefits. The information on the application concerning R.T.'s residence and employment was false, along with misrepresentations about who was receiving the benefits sought.

Execution of the Scheme

26.     On or about December 12, 2022, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MARTY MCCAULLEY, for the purpose of executing the foregoing scheme and artifice to defraud, and attempting to do so, knowingly caused to be transmitted the following writings, signs, signals, pictures, and sounds by means of wire communications in interstate commerce, to wit: an electronic application for Indiana Pandemic

7

UI benefits, causing an interstate wire communication from the Northern District of Ohio to IDD

in the State of Indiana.

All in violation of Title 18, United States Code, Sections 1343 and 2.

<div style="margin-left:50%">

DAVID M. TOEPFER
United States Attorney

By:  Elliot Morrison
Chief, White Collar Crimes Unit

</div>